# Thornton v. Meyers, Appellant.

*Judgment—Opening judgment—Evidence.*

A judgment entered upon a judgment note will be opened where the testimony of the defendant, strongly corroborated by other witnesses, although contradicted by the plaintiff, tends to show that the defendant and the subscribing witness did not sign and subscribe as the paper represented them to have done, and that the defendant was not at the place where the plaintiff alleged the note was executed but was sick at home a considerable distance away.

Argued Jan. 8, 1906. Appeal, No. 23, Jan. T., 1906, by defendant, from order of C. P. Luzerne Co., May T., 1904, No. 642, discharging rule to open judgment in case of P. M. Thornton v. Sarah M. Myers. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD, and BEAVER, JJ. Reversed.

Rule to open judgment.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in refusing to open judgment.

*W. H. Hines,* with him *D. Rosenthal,* for appellant.

*W. Alfred Valentine,* with him *P. M. Thornton,* for appellee.

OPINION BY HENDERSON, J., March 12, 1906:

The obligation on which the judgment was entered in this case bears date April 25, 1904, and is for the sum of $1,200. The defendant denies that the signature attached to the note is her signature or that she ever executed the obligation or authorized any one to do so in her behalf. Her testimony is direct and positive upon that point.

Edith Lark, whose name appears as a witness to the signature of the obligor, testified that she did not sign the note as a witness and that she never subscribed her name as a witness to her mother's signature at the place where it was alleged the note was executed. The defendant, her husband and her

daughter, Edith, all testified that the defendant was sick during the month of April, 1904; that she was at her home in the country and that she was not in the plaintiff's office nor in the city of Wilkes-Barre during that month.

Evidence was also offered that after the note was filed in the prothonotary's office it was examined by the defendant's counsel and that at that time it did not bear the name of Edith Lark, but that when it was next seen by him her name appeared thereon as a witness. It was alleged by the defendant that she did not owe the plaintiff $1,200 at the date of the note, or at any other time; that her only indebtedness to him was on account of a verbal promise to pay him $200 for professional services in the event that she succeeded in an action of ejectment then pending in which the plaintiff was her attorney, and that she had made payment to him on that account. It further appears from the evidence that when the counsel, now acting for her, informed the plaintiff that he was about to apply to have the judgment opened, the plaintiff said it was not necessary as only $350 was due on the judgment and that he would remit the amount in excess of that; and that soon thereafter a paper was filed by the plaintiff remitting $850 of the judgment.

The plaintiff gave evidence that the note was signed by the defendant in his office on the evening of the day of its date, that it was given to secure to him the fees to which he was entitled on account of the action of ejectment referred to. He also stated that the amount which it was understood he would charge was $200; this he explained, however, did not include compensation for his services in the Superior Court after the defendant had lost the case in the court below. It was not claimed by him that it was their intention that the whole amount would become due to him under any circumstances. His explanation of the large amount of the note was that the defendant wanted to cover up her property to prevent creditors from securing it. In the language of the plaintiff: "It was never intended that $1,200 should be paid to me. The $1,200 note was given merely to cover it up."

The plaintiff was corroborated as to the time and place of the execution of the note by his stenographer who stated that the defendant and her daughter were at the plaintiff's office

after dark; that the plaintiff read the note to them and told them it was for $1,200 and was to protect himself and his associate in their attorney fees.

Evidence was also offered that the defendant assented to the assignment of $125 of the judgment to the plaintiff's counsel.

The defendant explained that she understood the paper she was signing was a bill of costs.

This evidence raises a direct contradiction as to the execution of the obligation. If the defendant and the subscribing witness are believed, they did not sign and subscribe as the paper represents them to have done. If the defendant, her husband and her daughter are credited, the defendant was not at the place where the plaintiff alleges the note was executed, but was sick at home a considerable distance away. In such a conflict of evidence there should be a submission to a jury. The case is not as if the signature was admitted and an equitable defense presented for the consideration of a chancellor. There the defendant would be compelled to assume the burden of the presumption arising from the execution of the obligation. Nor is it a case of oath against oath simply, for the defendant is strongly corroborated by other witnesses.

Significance is attached by the appellee to the fact that the defendant in her first petition alleged that she was induced to sign the paper on the representation that she was signing a bill of costs and that she only recently had learned that the paper was a judgment note for the sum of $1,200. In her supplementary petition, however, she sets forth that she had not seen the obligation on which the judgment was entered at the time when her original petition was signed and that when the note was exhibited to her she saw that the signature was not genuine.

The case is controlled by Schomaker v. Dean, 201 Pa. 439. The defendant was entitled to a trial by jury.

The decree is therefore reversed; the rule to open the judgment is reinstated and is now made absolute and the record remitted for further proceedings.